CHARLES T. WILSON CO., INC. *v.* UNITED STATES (No. 4292) [1]

[1] C. A. D. 126.

64

United States Court of Customs and Patent Appeals, May 29, 1940

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellant.
*Webster J. Oliver,* Assistant Attorney General, (*Daniel G. McGrath,* special attorney, of counsel), for the United States.

[Oral argument April 9, 1940, by Mr. Sharretts and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant brought action in the United States Customs Court to recover certain alleged excess duties imposed upon its importation of dried ginger root which had been assessed by the Collector of Customs at the port of New York under paragraph 778, Tariff Act of 1930, as ginger root "prepared or preserved" at 20 per centum ad valorem. Appellant claimed that it was free of duty under the provisions of paragraph 1768 of said act as ginger root "not preserved or candied * * * unground."

The Third Division of said court overruled the protests which appellant had filed against the said action of the collector, and it is from the court's judgment so doing that appeal to this court has been taken.

The statutory provisions in controversy and a part of paragraph 781 of said act follow:

PAR. 778. Ginger root, candied, or otherwise prepared or preserved, 20 per centum ad valorem.

PAR. 1768. [Free list] Spices and spice seeds:

(1) Cassia, cassia buds, and cassia vera; cloves; clove stems; cinnamon and cinnamon chips; *ginger root, not preserved or candied;* mace; nutmegs; black or white pepper; and pimento (allspice); all the foregoing, if unground;

(2) anise; caraway; cardamom; coriander; cummin; and fennel. [Italics ours]

PAR. 781. Spices and spice seeds: Cassia, cassia buds, and cassia vera, ground, 5 cents per pound; cloves, ground, 6 cents per pound; clove stems, ground, 5 cents per pound; cinnamon and cinnamon chips, ground, 5 cents per pound; *ginger root, not preserved or candied, ground,* 5 cents per pound;  *  *  *  [Italics ours. We here omit quotation of a long list of spices, spice seeds, etc., named in this paragraph.]

It should be noted that paragraph 781 is the dutiable spice paragraph and that the duty is higher upon the ground article than upon the unground article—in other words, this paragraph, for the most part, may be referred to as the ground spice paragraph whereas the free list paragraph 1768 (1) definitely provides for the articles named therein in an unground condition.

The collector's classification of the merchandise followed instructions in T. D. 48457, 70 Treas. Dec. 157, wherein the Commissioner of Customs, with the approval of the Secretary of the Treasury, directed the collector at the port of New York in part as follows:

In view of the foregoing, you are hereby authorized to assess duty on ginger root changed from the natural state by drying sufficient to result in permanent preservation at the rate of 20 percent ad valorem under paragraph 778 of the Tariff Act of 1930. * * *

In the said Treasury decision it was mentioned that dried ginger root was imported in two forms, one with the skin on and the other with the skin removed; that where the skin had been removed the roots were reduced in size and that the drying process prevented decomposition.

In sustaining the action of the collector, the trial court said in part:

Upon the record as made it might seem that the presumption of correctness attaching to the collector's action has been overcome by the oral testimony of the witness to the effect that the merchandise has not been peeled and by the admissions of the defendant that the ginger root had been sun dried. However, it was held in the case of *Keonig & Schuster,* T. D. 39676, G. A. 8660, with reference to sundried cherries under a paragraph which provided for "cherries in a raw state, preserved in brine or otherwise," that they must be preserved by some extraneous means and that it was not sufficient to say that they were preserved by drying.

The witnesses undoubtedly were qualified to testify as to whether the cortex of this ginger root had been removed, although they had no knowledge as to how it might have been removed. The importer admitted that some of the cortex had been removed, but indicated that in the shipping some of the cortex is always removed. An examination of the samples introduced in evidence

persuades one that there had been an intentional removal of a greater portion of the cortex. We reach this conclusion because of the appearance of the root in this, that on the edges or sides of the roots, the roots being more or less flat, the cortex is almost entirely intact, but elsewhere it appears to have been removed. If, as the witness Trafford would have the court-believe, this cortex was removed by abrasion in handling or shipping, why would it not have been removed from all surfaces instead of on those that would have been easy to peel or scrape? None of the witnesses have displayed any personal knowledge of the method of harvesting and preparing the merchandise for shipment, and all of them having admitted that some of the cortex has been removed, we conclude from the appearance of the samples that this removal of the cortex was done as a method of preparation of the ginger root for market.

In this connection the following definition of ginger is found in Webster's New International Dictionary:

2. The hot and pungent aromatic root stalk of Z. officinale which when dried and unscraped is known as black ginger (also as coated, unpeeled, or unscraped ginger), and when scraped, as white ginger (also as African ginger, Cochin ginger).

On the question of whether or not the ginger root has been preserved, we have heretofore noted the change made in the statute. This change might indicate that paragraph 1768 was intended to care for this type of ginger root since it is the spice paragraph. Nevertheless, this court, following the declaration of the Court of Customs and Patent Appeals in Shallus v. United States, 18 C. C. P. A. 332, T. D. 44585, and United States v. Enbun, 19 C. C. P. A. 79, T. D. 45224, is bound to hold that drying is a process of preservation and preparation even though the drying be sun drying. There is nothing in the record to show as to how this merchandise was dried, but it seems to have been conceded that it was dried in the sun. From the evidence before us in this case and under the line of decisions above cited, we are compelled to hold that this merchandise is prepared and preserved, and therefore is provided for under paragraph 778, supra, as ginger root otherwise prepared or preserved, as assessed by the collector.

The samples of merchandise introduced in evidence show the roots to be small, irregularly shaped, light-brown colored, dried tubers or rhizomes, which are, for the most part, covered with a dried wrinkled bark or skin. On some of the roots, a portion of the covering, referred to in the testimony as "cortex," has been removed. The record does not definitely show whether it was removed by accident or otherwise. The trial court concluded that the appearance of some of the tubers indicated that a part of the cortex on a portion of the importation had been intentionally removed.

The testimony of the witnesses would indicate, although it is not definitely proved, that the moisture was evaporated from the roots by sun drying. The trial court stated that the Government conceded that they had been sun-dried. There is no such concession in this court. Regardless of whether this is to be regarded as a material consideration, we will regard the merchandise, upon the instant record, as having been dried by the sun and not by any artificial process.

The Government introduced no testimony. The testimony of importer's witnesses shows that the involved merchandise is the dried natural African ginger root and is imported from Africa and India;

that this ginger root, like other roots some of which are used for medicine, is dug from the ground, washed, dried, and shipped; that green ginger root as it comes from the ground is not imported commercially and could not be shipped any great distance without decomposition unless it was refrigerated; that on account of its natural moisture it would decay and mold if not dried or preserved in some way; that the involved merchandise had not been treated with any kind of preservative, and that some of the pieces showed evidence of mold. The record shows that ginger is also imported into this country from the West Indies and China. The witnesses, though well-informed on the subject, were not able to state definitely whether the removal of a portion of the cortex on some of the roots was intentional or accidental. One witness testified:

X Q. Is some of the surface missing from it?—A. Quite likely.

X Q. Well, would you look at some of it?—A. I don't have to, I have seen this stuff before, and I know that quite likely some has been removed. In shipping in bags there is a certain amount of friction, and some will be removed. If you dump this bag on the floor I will show you some of the outer coverings that will have been rubbed off.

X Q. So that the outer covering of that ginger root is removed?—A. It might be removed in shipping, I just said.

X Q. Well, would you look at that particular exhibit, and tell the court whether or not that ginger root is peeled?—A. It is not peeled.

X Q. Is there any of the outer surface removed from it?—A. There may be. I cannot definitely state, but I have every reason to believe from my knowledge and experience in handling ginger, in shipping, and so on, that some of the outer covering will be removed.

Judge CLINE. You are asked to look at that. Strike the answer.. You have been asked to do certain things. Now please do that.

The WITNESS. Well, I would say——

Judge CLINE. Look at that ginger and say if you can whether or not it has been——

The WITNESS. It has not been peeled in the sense of what one would call peeling, taking a knife and taking some off.

The witness stated that there was a peeled ginger root that was of a creamy-white color but that the instant merchandise was not of that variety. This witness testified definitely that African ginger root of the kind at bar "has not been imported in any other form than as represented by these exhibits," referring to the exhibits in this case.

The importer in this court, in urging a reversal of the judgment of the trial court, contends that the legislative history of the provision and similar provisions in prior tariff acts requires a holding that the involved ginger root which, it asserts, is in the crudest form in which ginger root has ever been imported from Africa, should be entitled to admission free of duty. In certain respects portions of appellant's testimony tend to sustain the conclusion that the crudest form in

which African ginger has been imported is a root similar to the ones at bar which has been dug from the ground in a moist condition, cleaned and sun-dried. The importer further contends, and we think logically, as follows:

As a spice, ginger appears in two forms—(1) The washed and dried or decorticated and dried rhizome (roots) unground; and (2) The washed and dried or decorticated and dried rhizome, ground. The unground ginger root is provided for among other dried unground spices in paragraph 1768 of the free list. The ground rhizome is provided for in the dutiable schedule among other dried ground spices in paragraph 781. It will be noted that the title to paragraph 1768 is "Spices and spice seeds" and, in addition to ginger root, the paragraph names such dried spices as "Cinnamon," "mace," "nutmegs" and "pepper". It will also be noted that paragraph 781 of the dutiable list also bears the title "Spices and spice seeds" and, in addition to ground ginger root, names such dried ground spices as "ground cinnamon, ground nutmegs, etc."

Ginger root, candied, or otherwise prepared or preserved, is not a spice and is not provided for in either of the spice paragraphs. It is a pickle, preserve or sweetmeat, and was so classified until specifically provided for in the Act of 1922. In the Acts of 1922 and 1930 it is provided for outside of the spice paragraphs in paragraph 776 of the Act of 1922 and 778 of the present Act.

Obviously the young green ginger root in its natural state is neither a spice nor an article of commerce. If dried, it becomes a crude spice ready to be ground and used for spice purposes, or, as pointed out by the Encyclopaedia Britannica *supra*, if the roots are collected in a young green state, washed, scraped and preserved in syrup, it forms a delicious preserve, or, if cut into pieces and preserved in sugar it forms a very agreeable sweetmeat.

The following language which is referred to in appellant's brief is quoted from the Encyclopaedia Britannica, 14th Edition, Volume 10, page 358:

Ginger is known in commerce in two distinct forms, coated and uncoated ginger, *i. e.* having or wanting the epidermis. For the first the pieces, called "races" or "hands," from their irregular palmate form, are washed and simply dried in the sun. In this form ginger presents a brown, more or less irregularly wrinkled or striated surface, and when broken shows a dark brownish fracture, hard, and sometimes horny and resinous.

Ginger root, dried but unground, has long been an article of importation. It was specifically provided for in the tariff act of 1897, where the language employed was "ginger root, unground and not preserved or candied." All succeeding tariff acts have contained language in some form that specifically provided for like merchandise. Evidently, although there is no proof on the subject, preserved or candied ginger root was classified in some dutiable provision such as a provision for sweetmeats, etc. The tariff act of 1909 contained a provision for "ginger root, unground and not preserved or candied" and no specific provision for ginger root preserved, prepared or candied. The tariff act of 1913 contained a provision for "ginger root, unground and not

preserved or candied." Again, there was no specific provision for ginger root, prepared, preserved, or candied. In the Tariff Act of 1922 there appeared the following provision in paragraph 779:

PAR. 779. Spices and spice seeds: * * * ginger root, not preserved or candied, unground 2 cents per pound; ground, 5 cents per pound; * * *

Also in the same act, Congress inserted a new provision as follows:

PAR. 776. Ginger root, candied, or otherwise prepared or preserved, 20 per centum ad valorem.

It is seen that under paragraph 779 of the Tariff Act of 1922, ginger root, unground, of the type at bar, was dutiable at 2 cents per pound and if ground it was made dutiable at 5 cents per pound. The committees of Congress which prepared the Tariff Act of 1930 were given the following information by the Tariff Commission (Summary of Tariff Information, 1929, p. 1492):

DESCRIPTION AND USES.—Ginger is the washed and dried, or decorticated and dried, rhizome of *Zingerber officinale Roscoe*. Ginger root is used for the preparation of candied or crystalized ginger. (See paragraph 776.) In the ground form it is used by bakers, and in the household for flavoring foods. It finds an important use in medicine as a stimulant and carminative and is the basis of ginger ales.

In referring to paragraph 776 of the Tariff Act of 1922, which was the paragraph providing for ginger root, candied or otherwise prepared or preserved, the Tariff Commission said (Summary of Tariff Information, 1929, page 1470):

DESCRIPTION AND USES.—Candied or crystallized ginger root is made by boiling the cleaned ginger root in sugar sirup, draining and crystallizing. Preserved ginger root is made by boiling the young ginger roots in sugar sirup and packing in jars in sirup. This type of preserved ginger is known in the trade as Canton ginger. Ginger root, candied or preserved, is used as a confection.

PRODUCTION.—In the United States candied ginger root is an important product of candy manufacturers and confectioners. Large quantities of crude ginger root, approximately 5,000,000 pounds annually, are imported and used in part for the preparation of candied ginger. New York, Massachusetts, Illinois, and Pennsylvania are the important States in confectionery manufacture.

With this information before Congress, it enacted the three provisions which we have hereinbefore set out. For emphasis we repeat that in paragraph 1768, the free list paragraph, it provided for ginger root not preserved or candied, if unground. It then provided, in paragraph 781, for the same kind of root at 5 cents per pound, if it was not preserved or candied, and was ground. In paragraph 778, it made a provision for ginger root if candied or preserved.

In the importer's brief is the following well-stated, logical contention:

The candied, prepared or preserved ginger root is obviously the ginger root prepared or preserved for use as a food. It is not reasonable to assume that the Congress intended by the provision for "ginger root, candied or otherwise pre-

pared or preserved" to invade the spice provisions and remove therefrom the dried ginger root which had always been classified as a spice and is evidently the only form in which ginger root has ever existed as a spice. In other words, the Congress did not intend to nullify the spice provision for ginger root. There is an obvious distinction between ginger root dried for use as a spice and ginger root which has been prepared or preserved for use as a food. The hard resinous root here in question is a spice in its crudest form as a spice. It has not been prepared or preserved for use as a food.

It is our view that if the involved ginger root should be held dutiable under paragraph 778 it would result in rendering nugatory and ineffective the free list provision for ginger root. Ginger root of the character at bar had long been favored by a low rate of duty and it is not reasonable to suppose that Congress, when it provided for preserved and candied ginger root, intended by the language used to include thereunder the kind of merchandise it had long favored with a low rate of duty. We think that Congress clearly intended that merchandise like that at bar should be free of duty. It also intended that if the roots had been ground before importation, the resulting product should bear a duty of 5 cents per pound. As we understand it, before ginger root can be ground it must be dried. Under such circumstances, it would seem to be an erroneous conclusion to hold, as the Government asks us to do, that Congress intended to impose a duty of 5 cents per pound upon a dried root which had been ground and at the same time impose a 20 per centum ad valorem duty upon the same root which had not been ground merely because drying, under some circumstances, is regarded as a process of preservation.

Unquestionably, there are many imported articles which have been "preserved" in a tariff sense merely by a process of drying. Probably dried meat and prunes would be regarded as preserved and in this way be distinguished from such articles in their natural state. In the instant case, however, it seems too clear to permit of logical contention to the contrary that Congress never contemplated the importation of African ginger root, or for that matter any kind of ginger root, in a green state, and that in making the three provisions relating to ginger root in the Tariff Act of 1930 it was particularly concerned with imposing a duty upon ground ginger, which was a prepared spice, and also upon preserved and prepared ginger root which was not a spice but which was a food. This view is consistent with the oft-repeated theory of tariff enactment that a raw product which this country does not produce is usually favored in tariff laws but that the same raw product, when improved by manufacturing efforts such as preserving or preparing the same in the foreign country, would be made dutiable in order to encourage such preparation or preservation being brought about in this country. We are of the opinion, therefore, that regardless of the fact that drying often is regarded as a process

of preservation in a tariff sense it should not be regarded as such when applied to merchandise like that at bar. It seems obvious that any other construction of the involved tariff provisions would lead to anomalous results.

We are not impressed with the suggestion that either the samples or the testimony of record show that the imported merchandise has been intentionally decorticated. Nor do we mean to suggest that if it had been so treated our conclusion would be different from that arrived at herein. The Treasury Department instructed the collector to levy duty upon dried ginger regardless of whether or not it had been decorticated on the theory that drying was a process of preservation. The question as to the proper classification of dried, peeled ginger root, upon the instant record, is not before us.

It follows that the judgment of the trial court should be and it is *reversed*, and the cause is *remanded* for proceedings not inconsistent with the views herein expressed.